UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

MARGARITA CASTILLO,

               Plaintiff,

   -against-

BJ's Wholesale Club, BJ's Wholesale
Club, Inc., BJ's Wholesale Club
Holdings, Inc., Gateway Center
Properties, LLC, The Related Companies,
LP, The Related Companies, Inc.,

               Defendants.

---------------------------------------X

**MEMORANDUM AND ORDER**

22-CV-01621(KAM)(RLM)

**KIYO A. MATSUMOTO, United States District Judge:**

        Plaintiff Margarita Castillo commenced this personal
injury action on September 29, 2020 in the Supreme Court of New
York, Queens County.  (ECF No. 1-2 ("Compl.").)  On March 24,
2022, Defendants BJ's Wholesale Club, BJ's Wholesale Club, Inc.,
BJ's Wholesale Club Holdings, Inc., Gateway Center Properties
LLC (s/h/a Gateway Center Properties I, LLC), The Related
Companies, LP, and The Related Companies, Inc. filed a notice to
remove the action to federal court, invoking this court's
diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (ECF No. 1
("Notice of Removal").)  Defendants argue that Plaintiff
fraudulently joined Defendants Gateway Center Properties, LLC,
The Related Companies, LP, and The Related Companies, Inc. to

1

the action solely to destroy the diversity of citizenship of the parties.  (*Id.* ¶ 4.)

Presently before the court is Plaintiff's motion to remand the action back to state court (*See* ECF No. 10 ("Pl.'s Mot.")).  For the reasons set forth below, Plaintiff's motion is **GRANTED**.

<u>**BACKGROUND**</u>

Plaintiff alleges that on November 19, 2017, she "was caused to trip and fall as a result of a box on the floor" in an aisle of BJ's Wholesale Club located at 339 Gateway Drive, Brooklyn, New York.  (Compl. ¶¶ 19, 61-62.)  On September 29, 2020, Plaintiff commenced this action in the Supreme Court of New York for Queens County, asserting a negligence claim against BJ's Wholesale Club, BJ's Wholesale Club, Inc., BJ's Wholesale Club Holdings, Inc. (together, "BJ's"), Gateway Center Properties, LLC ("Gateway"), The Related Companies, LP, and The Related Companies, Inc. (together, "Related").  (Compl. ¶¶ 63-112.)  In accordance with N.Y. C.P.L.R. § 3017(c), Plaintiff's complaint did not include an *ad damnum* clause specifying the amount of damages sought.  Instead, Plaintiff alleged that she was damaged in a sum that "exceeds the jurisdictional limits of the lower courts" in New York.  (Compl. ¶ 113.)

2

On October 19, 2020, Defendants answered the complaint (ECF No. 1-4 at 2-7.), and pursuant to N.Y. C.P.L.R. § 3017(c), also requested an *ad damnum* from Plaintiff setting forth the total damages to which Plaintiff claimed she was entitled. (ECF No. 1-4 at 12-13.)[1] Defendants also served a demand for a verified bill of particulars that sought additional information about Plaintiff's claimed damages, such as lost earnings and hospital expenses. (*Id.* at 9-11.) Plaintiff filed a Response to Defendants' Demand for Discovery and Inspection on December 10, 2021, setting forth the total damages to which Plaintiff claimed she was entitled, in the amount of $5,000,000. (ECF No. 7-4 at 13-14.) In addition, Plaintiff responded to Defendants' demand for a bill of particulars that sought additional information about Plaintiff's claimed damages. (*Id.* at 1-9.)

Defendants collectively filed a notice of removal of this action to federal court on March 24, 2022, invoking this court's diversity jurisdiction on the grounds that Gateway and Related, both New York citizens, are "not proper and/or viable defendants in the subject action." (*See* Notice of Removal ¶ 7-11.)[2] Defendants argue that, without Gateway and Related as non-

---

[1] All pagination pin citations refer to the page number assigned by the court's CM/ECF system.

[2] Plaintiff does not dispute that Gateway and Related were "citizens of New York State at commencement of this action and so remain[]," nor that BJ's defendants are "incorporated in Delaware with [a] corporate office in Massachusetts." (Pl.'s Mot. at 3.) For the purposes of assessing diversity jurisdiction, a limited liability company such as Gateway has the imputed

diverse defendants in the action, the controversy is between Plaintiff, a citizen of New York, and BJ's, a citizen of Delaware (via incorporation) and of Massachusetts (as its principal place of business). (*Id.* ¶ 8.)

On April 22, 2022, Plaintiff requested a pre-motion conference, seeking to move to remand this action back to state court. Plaintiffs argued that because Defendants Gateway and Related are "New York residents," complete diversity is lacking between parties, as required by 28 U.S.C. § 1332. (ECF No. 7.) Defendants responded in opposition, arguing that under the doctrine of fraudulent joinder, Gateway and Related ("Gateway/Related") were improperly joined to defeat federal diversity jurisdiction. (ECF No. 8 at 1.) The court held a pre-motion conference on May 11, 2022. (05/11/2022 Minute Entry.) Plaintiff's motion is now fully briefed and ripe for decision.

## LEGAL STANDARD

### I.   Diversity Jurisdiction and Removal

Pursuant to 28 U.S.C. § 1332(a), federal district courts have original jurisdiction over all civil actions (a) between citizens of different states; and (b) where the amount

---

citizenship of its members. *See Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000). The record before the court is devoid of information regarding the members of Gateway, nor does the record reveal their respective citizenships. The court notes, however, that Gateway's status as a citizen of New York State is undisputed by Plaintiff.

in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a)(1).
"Complete" diversity is required — all parties on one side of
the action must be citizens of a different state from each of
the parties on the other side.  *See St. Paul Fire & Marine Ins.
Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005)
("Diversity is not complete if any plaintiff is a citizen of the
same state as any defendant.") (citations omitted).

In turn, when removal is based upon the court's
diversity jurisdiction, the removing party must show that there
is complete diversity between all plaintiffs and all defendants.
*See Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 295-96
(2d Cir. 2000) (stating that, because the defendant sought
removal to federal court, defendant "bore the burden of
establishing that the requirements for diversity jurisdiction
were met").

## II.  Fraudulent Joinder

### A. Standard and Defendants' Burden

Under the doctrine of fraudulent joinder, "courts
overlook the presence of a non-diverse defendant if from the
pleadings there is no possibility that the claims against that
defendant could be asserted in state court."  *Briarpatch Ltd.,
L.P, v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir.
2004); *see also Whitaker v. Am. Telecasting*, Inc., 261 F.3d 196,

5

207 (2d Cir. 2001) ("Joinder will be considered fraudulent when
it is established that there can be no recovery [against the
defendant] under the law of the state on the cause alleged.")
(internal quotations and citation omitted).  The doctrine is
designed to prevent plaintiffs from defeating a federal court's
diversity jurisdiction or a defendant's right to removal by
joining parties with no genuine connection to the controversy as
defendants.  *See Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459,
460-61 (2d Cir. 1998) (collecting cases); *see also Brown v. Eli
Lilly and Co.*, 654 F.3d 347, 356-57 (2d Cir. 2011).[3]

Defendants bear the "heavy burden" of establishing by
"clear and convincing evidence" that a non-diverse defendant was
fraudulently joined to defeat diversity.  *See, e.g.*, *Butler v.
Cigarette Realty Co.,* 2015 WL 7568645, at *2 (E.D.N.Y. Nov. 24,
2015) (citing *Briarpatch*, 373 F.3d at 302).  The defendant must
demonstrate either that "there has been outright fraud in

---

[3] The court notes that 28 U.S.C. § 1441(b)(2) would ordinarily bar this action
from being removed to federal court.  Under that statutory provision, a civil
action removable solely on the basis of diversity jurisdiction "may not be
removed if any of the parties in interest properly joined and served as
defendants is a citizen of the State in which such action is brought." 28
U.S.C. § 1441(b)(2).  In the instant case, the parties do not dispute that
Gateway/Related are citizens of New York.  As such, Defendants would normally
be barred from removing the case to a federal court in New York.  The court
notes, however, that it would be logically inconsistent to find that forum
defendants Gateway/Related are immediately barred from removal, when the
issue is whether they were fraudulently joined in the first place.  *Cf.*
*Mallek v. Allstate Indem. Co.*, 2018 WL 3635060, *2 (E.D.N.Y. Mar. 12, 2018),
*report and recommendation adopted*, 2018 WL 3629596 (E.D.N.Y. July 31, 2018)
(stating that the fraudulent joinder doctrine "determines whether a party is
properly 'joined' for the purposes of determining diversity jurisdiction" and
"serves the same function in the context of removal").

plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Id.* (citing *Pampillonia*, 138 F.3d at 461); *see also Mallek v. Allstate Indem. Co.,* 2018 WL 3635060, *2 (E.D.N.Y. Mar. 12, 2018), *report and recommendation adopted*, 2018 WL 3629596 (E.D.N.Y. July 31, 2018).

Importantly, "[a]ny possibility of recovery, even if slim, militates against a finding of fraudulent joinder; only where there is no possibility of recovery is such a finding warranted." *Ehrenreich v. Black*, 994 F. Supp. 2d 284, 289 (E.D.N.Y. 2014) (citation omitted); *see also DNJ Logistics Grp. Inc., v. DHL Exp. (USA), Inc.*, 727 F. Supp. 2d 160, 165 (E.D.N.Y. 2010) ("[E]ven if there is doubt as to whether a complaint would survive a motion to dismiss in state court, this doubt does not preclude remand. To the contrary, given the heavy burden on a party advocating removal on the ground of fraudulent joinder, it is only in the situation where 'state case law or legislation removes all reasonable possibility that the plaintiff would be permitted to litigate the claim' that remand should be denied."). When there is no allegation of outright fraud, as is the case here, the fraudulent joinder inquiry "focuses on whether recovery is *per se* precluded." *Battaglia v.*

7

*Shore Parkway Owner LLC*, 249 F. Supp. 3d 668, 672 (E.D.N.Y. 2017) (citing *Segal v. Firtash*, 2014 WL 4470426, at *3 (S.D.N.Y. Sept. 9, 2014)).  If a removing defendant successfully proves that non-diverse parties were fraudulently joined, the federal court will retain jurisdiction so long as the other requirements of diversity jurisdiction are met.  *See Sonnenblick-Goldman Co. v. ITT Corp.*, 912 F. Supp. 85, 88 (S.D.N.Y. 1996). Alternatively, if a removing defendant cannot prove fraudulent joinder, the federal court does not have proper subject matter jurisdiction over the matter, and the case must be remanded to state court.

When subject matter jurisdiction is contested, as when assessing fraudulent joinder, courts may consider materials outside the pleadings.  *See, e.g., Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010) ("Such materials can include documents appended to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis.").  In the specific context of fraudulent joinder, documents outside of pleadings can be considered "to determine if the pleadings can state a cause of action." *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 395 (S.D.N.Y. 2009) (citations omitted).  All factual and legal issues and ambiguities must be resolved in the plaintiff's favor.  *See*

*Pampillonia*, 138 F.3d at 461; *see also Butler*, 2015 WL 7568645, at *2.

### B. New York State's Pleading Standards

Because Defendants do not allege there was outright fraud in Plaintiff's pleadings, the instant case turns on whether Plaintiff has a possibility of stating a viable cause of action against Gateway/Related in state court.  In answering this question, the district court should apply the state's pleading standard.  *See MBIA*, 706 F. Supp. 2d at 394; *see also Gensler v. Sanolfi-Aventis*, 2009 WL 857991, at *3 n.3 (E.D.N.Y. Mar. 30, 2009) (noting that "state procedural rules apply in evaluating a claim of fraudulent joinder . . . because the question is whether an action could be maintained against the allegedly nominal party in state court").

Under New York's liberal pleading rules, a plaintiff need only provide "at least basic information concerning the nature of a plaintiff's claim and the relief sought."  *See MBIA*, 706 F. Supp. 2d at 394 (citing *Parker v. Mack*, 460 N.E.2d 1316, 1317 (N.Y. 1984)).  In assessing fraudulent joinder, all uncertainties in state law are resolved in the plaintiff's favor, and the complaint is subjected to even "less searching scrutiny than on a motion to dismiss for failure to state a claim."  *Campisi v. Swissport Cargo Servs., LP*, 2010 WL 375878,

9

at *2 (E.D.N.Y. Jan. 26, 2010) (citation omitted); *see also*
*Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 328-29
(S.D.N.Y. 2007) ("[I]t is not even enough for [the defendants
asserting fraudulent joinder] to show that Plaintiffs' cause of
action against [the non-diverse defendant] would not survive a
motion to dismiss." (internal citations omitted)).

## DISCUSSION

### I.    Diversity Jurisdiction

The parties do not dispute that (a) Plaintiff is a
citizen of New York; (b) BJ's is and was at the time the action
was commenced, a corporation incorporated in Delaware with its
principal place of business in Massachusetts; and (c) Gateway
and Related are and were citizens of New York at the time the
action was commenced.  Per Plaintiff's Response to Demand for
Discovery and Inspection, she is seeking $5,000,000 in damages,
thus satisfying the $75,000 requirement of 28 U.S.C. § 1332(a).
(ECF No. 7-4 at 14.)  Thus, the only question for this court in
assessing subject matter jurisdiction is whether Gateway/Related
are properly joined parties.

### II.   Fraudulent Joinder

#### A. Liability of an Out-of-Possession Property Owner/Landlord Under New York Law

The central issue before the court is whether
Plaintiff could state a viable cause of action against

10

Gateway/Related as an out-of-possession property owner and landlord under New York State law.  More specifically, the Defendants bear the heavy burden of proving — with clear and convincing evidence — that Plaintiff could not assert a claim against Gateway/Related in state court because there is "no possibility" that Gateway/Related could be liable to Plaintiff under New York state law.  *See Briarpatch*, 373 F.3d at 302 (explaining that, under the fraudulent joinder doctrine, there must be no possibility that the claims against that defendant could be asserted in state court).  Considering New York's pleading standards only require "at least basic information concerning the nature of a plaintiff's claim and the relief sought," this court cannot find that Defendants have satisfied their burden under the Second Circuit's "no possibility" test. *See MBIA*, 706 F. Supp. 2d at 394; *see also Schlackman v. Robin S. Weingast & Assocs., Inc.*, 18 A.D.3d 729, 729-30 ("A pleading attacked for insufficiency must be accorded a liberal construction, and if it states, in some recognizable form, any cause of action known to our law, it cannot be dismissed." (internal quotations and citation omitted)).

Under New York state law, an "out-of-possession property owner is not liable for injuries that occurred on the property unless the owner 'retained control over the property or

is obligated by contract to perform repairs or maintenance.'" *Battaglia v. Shore Parkway Owner LLC*, 249 F. Supp. 3d 668, 671 (E.D.N.Y. 2017) (citing *Grippo v. City of New York*, 45 A.D.3d 639, 640 (2d Dep't 2007)).[4]  For such an exception to apply, however, the property owner "must have completely parted with the control of the building."  *Id.*; *see also Siemion v. BJ's Wholesale Club et al.*, 2019 WL 3561896, at *2 (E.D.N.Y. Aug. 6, 2019) ("A landlord has sufficient control to impose liability if the landlord maintains the building, makes necessary repairs, or retains the right to re-enter to examine the premises.").

**B. Application**

Here, Defendants argue that Plaintiff could not state a cause of action against Gateway/Related in state court because Gateway/Related "was an out-of-possession landlord that owed no duty of care to plaintiff on the date of the alleged accident." (Defs.' Mot. ¶¶ 4-5.)  For the reasons set forth below, the court finds that Defendants have failed to demonstrate that there is "no possibility" for Plaintiff to assert a claim against Gateway/Related in state court.

Defendants rely primarily on the Affidavit of Norma Bang, property manager of Gateway Center Mall where BJ's

---

[4] The court notes that both plaintiff and defendants refer to Gateway/Related as both "property owner/owner" and "landlord" interchangeably.  (Compl. ¶¶ 23-26, 30-33, 37-42; ECF. 11-1 ("Defs.' Opp.") ¶ 5, n.3.)

Wholesale Club is located, ("Aff.") and the Lease ("Lease")
between BJ's Wholesale Club, Inc. and Gateway Center Properties,
LLC, dated February 9, 2011, which was in effect on the date of
the alleged incident.[5]  (ECF Nos. 1-5.)  Section 17.14 of the
Lease states:

> Landlord and its designees shall have **the
> right to enter the Demised Premises** with
> reasonable prior notice, at reasonable hours
> accompanied by an employee of Tenant **to
> inspect the Demised Premises, and to make
> any repairs required of Landlord under this
> Lease**[.][6]
> (Lease at 59.) (emphasis added)

Pursuant to Section 17.14, Gateway has maintained the
right to enter the premises for inspection with the Tenant and
for making required repairs under the Lease.  Under New York
law, this provides at least a possibility that Gateway/Related
may have retained sufficient control to be found liable, and
cannot support the notion that Gateway/Related has "completely
parted with the control of the building." *See Battaglia*, 249 F.
Supp. 3d at 371.  As such, the exception that may allow an out-
of-possession landlord to escape liability under New York law
cannot definitively apply here.

---

[5] Defendants describe Norma Bang as "Property Manager for Gateway/Related."
(ECF 11 ("Defs.' Affirmation in Opp'n") ¶ 4.)
[6] The Lease defines "Demised Premises" as: "The land and the Building and
other improvements, thereon, including, without limitation, the sidewalks
adjacent to the Building and the other Service Areas, shown on the Site Plan
as 'BJ's Premises.'"  (Lease at 10.)

Defendants also argue that the Affidavit and Lease "clearly establish[] that Gateway and Related did not operate, control, or otherwise have any obligation over the stocking of products and/or inspection, cleaning or removal of boxes from the floors within the interior of the subject BJ's Club prior to and including the date of plaintiff's alleged incident." (Defs.' Mot. ¶ 4.)  The court disagrees.  Whether or not the Affidavit and Lease "clearly establish[]" Gateway/Related's alleged lack of control over the premises is ultimately a factual question, one that would require this court to adjudicate the merits of the underlying suit.  Such adjudication is inappropriate at the pleadings stage.  *See, e.g.*, *Ruiz v. Forest City Enterprises*, 2010 WL 3322505, at *3 (E.D.N.Y. Aug. 20, 2010) (holding that whether a non-diverse property owner "controls or is obligated to repair the premises is a question of fact that cannot be resolved at the pleading stage"); *see also Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 328-29 (S.D.N.Y. 2007) ("[D]efendants seek to have this Court improperly review the merits of plaintiffs' claims [] upon consideration of a motion to remand.  For this Court to conduct such an inquiry would run counter to the well-settled standard for reviewing a fraudulent joinder claim in opposition to a motion to remand[.]").  At most, the court concludes that the

14

Affidavit and Lease do *not* clearly establish a lack of operation or control by Gateway and Related.[7]

The court is not persuaded by Defendants' attempts to distinguish *Siemion* and *Battaglia*.  First, defendants argue that, in contrast to *Siemion* and *Battaglia*, there is no legal possibility that Plaintiff can recover from Gateway/Related because "Gateway/Related did not retain control over the premises."  (Defs.' Mot. ¶ 14.)  This argument is, at best, conclusory.  The central question in this motion to remand involves whether Gateway/Related in fact retained control over the premises; it is insufficient to simply state that Gateway/Related "did not" retain control.  Second, Defendants argue that "Gateway/Related was not contractually obligated to stock, maintain, clean, move and/or remove boxes from the floor and/or store shelves within the interior of the subject BJ's Club."  (*Id.*)  The court agrees with *Siemion* - where defendant BJ's Wholesale Club, Inc. made a very similar argument - that "the requirements for 'retaining control' are not so narrowly

---

[7] Though it is true that *Siemion* involved a "different property owner" and "a completely different BJ's location," the court is unpersuaded by Defendants' contention that it is "unavailing" for the analysis in *Siemion* to be "similarly applied" here.  (Defs.' Mot. ¶ 14.)  This is especially so when the language of the specific lease provisions discussed in *Siemion* bear significant resemblance to those in the instant Lease.  *See* 2019 WL 3561896, at *3 (explaining how provisions §§ 7.2 and 17.14 in BJ's lease demonstrate that the non-diverse landlord was not an out-of-possession landlord under New York law).

drawn." *Siemion*, 2019 WL 3561896, at *3.[8]   Finally, Defendants

argue that Plaintiff does not allege "that the subject accident

arose out of a structural or design defect."  (Defs.' Mot. ¶

14.)   The court does not believe that this fact distinguishes

the instant case substantively from *Siemion* or *Battaglia*.[9]   The

*Battaglia* court previously noted that the right to enter the

premises "may constitute sufficient retention of control to

impose liability" on the property owner/landlord if the

dangerous condition on the premises "represents a significant

structural or design defect that violates a specific statutory

provision."  *Battaglia*, 249 F. Supp. 3d at 671 (internal

quotations and citation omitted).   In the instant case,

Plaintiff alleged "she was caused to trip and fall as a result

of a box on the floor."  (Compl. ¶ 62.)   Defendants seek to

differentiate the instant case by relying on the following

language in *Battaglia*:

> The complaint does not allege the specific
> circumstances of plaintiff's fall.
> Therefore, although it is unlikely that her
> fall was the result of some structural or
> design defect, **the complaint leaves that
> possibility open, and I cannot conclude at**

---

[8] In *Siemion*, defendant BJ's Wholesale Club, Inc. argued that the property owner/landlord "did not operate, control, or otherwise have any obligation to inspect, clean, and/or maintain the *floor* of the interior." 2019 WL 3561896, at *3.

[9] The plaintiff in *Siemion* alleged that she "slipped and fell down 'due to a defective, dangerous, and trap-like condition at the Premises.'"  2019 WL 3561896 at *1.  Neither that allegation nor the allegation made by instant Plaintiff regarding the incident's circumstances foreclose the possibility that the injury was caused by a structural or design defect.

> **this time that there are no set of facts on
> which plaintiff could recover from [non-
> diverse landlord/property owner].**
>
> *Battaglia*, 249 F. Supp. 3d at 672 (emphasis
>
> added).

Although Defendants appear to rely on Plaintiff's allegation in the Complaint about the circumstances of her alleged fall, that is not sufficient.  The essence of the fraudulent joinder inquiry is whether all possibility of a cause of action against the non-diverse defendant has been foreclosed. That is not the case here, particularly when the court is bound to resolve all factual issues and ambiguities in the plaintiff's favor.[10]  *See Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998).  Even if "it is unlikely" that Plaintiff's fall was the result of a structural or design defect, so long as that possibility remains open, this court "cannot conclude at this time that there are no set of facts on which plaintiff could recover" from Gateway/Related.  *See Battaglia*, 249 F. Supp. 3d at 672.

Defendants also assert that the Lease requires BJ's to indemnify Gateway/Related from liability.  (Defs.' Mem. ¶¶ 6-7,

---

[10] BJ's Incident Report regarding the alleged accident describes the incident as "Member bent down to pick up a 4 pack of Welch's Sparkling Grape Juice, tripped and fell on her knees. Medical treatment sought."  (ECF No. 8-1 at 1.)  The court's analysis remains unchanged, to the extent this Incident Report may "clarify or amplify the claims actually alleged."  *See MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 395 (S.D.N.Y. 2009).

10.)  District courts in this Circuit and others, however, have
repeatedly held that "the mere fact that a defendant is
indemnified by another defendant does not transform the
indemnified defendant into a nominal party." *See, e.g.*,
*Mieschberger v. Dana Corp.*, 2011 WL 4916926, *2 (E.D.N.Y. Oct.
11, 2021) (collecting cases).  The court does not find a
sufficiently persuasive reason — nor was one offered by
defendants — to depart from those cases here.

This court remains bound by the fraudulent joinder
standard as established by the Second Circuit.  The district
court's role in assessing fraudulent joinder is not to assess
the *strength* of plaintiff's claims, but rather to assess whether
plaintiff *could* assert such a claim against the non-diverse
defendants in state court.  Here, the court finds that Plaintiff
could.  *See MBIA*, 706 F. Supp. 2d at 396 ("[T]he inquiry remains
whether Plaintiffs have a possibility of asserting such claims,
not whether Plaintiffs are likely to succeed on these claims on
the merits.").  The Second Circuit's "no possibility" standard
is a high one, and the court does not find that Defendants here
have met it.

It is true that courts vary as to "how restrictive or
permissive they want to be" when fraudulent joinder is alleged.
*Battaglia*, 249 F. Supp. 3d at 673.  In a case such as this,

18

however, (a) that bears such relevant similarities to recent
cases involving motions to remand in this very district, *see
Siemion*; *Battaglia*, and (b) where defendants have failed to cite
a case denying a motion to remand on similar factual grounds—in
this district or otherwise—the court finds that defendants have
failed to proven there is "no possibility" that "plaintiff can
state a cause of action against the non-diverse defendant in
state court." *Pampillonia*, 138 F.3d at 461.

**III. Attorney's Fees**

          Plaintiff seeks costs and actual expenses resulting
from the defense of this removal, including attorneys' fees.
(Pl.'s Mot. at 11; Pl.'s Reply at 5.).  A district court may
"require payment of just costs and any actual expenses,
including attorney fees, incurred as a result of the removal."
28 U.S.C. § 1447(c); *see Morgan Guar. Trust Co. of New York v.
Republic of Palau,* 971 F.2d 917, 924 (2d Cir. 1992) ("The
statute as a whole . . . affords a great deal of discretion and
flexibility to the district courts in fashioning awards of costs
and fees.").  The standard for awarding such fees hinges on the
"reasonableness" of removal.  *See Martin v. Franklin Cap. Corp*.,
546 U.S. 132, 136 (2005) ("[A]bsent unusual circumstances,
attorney's fees should not be rewarded when the removing party
has an objectively reasonable basis for removal.")  Though

19

Defendants' removal petition was unsuccessful, the court finds that they had an objectively reasonable basis for removal, because this court's lack of jurisdiction was not obvious "from the face of the [removal] petition." *Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 328-29 (S.D.N.Y. 2007) (citing *Arseneault v. Congoleum*, 2002 WL 472256, at *9 (S.D.N.Y. Mar. 26, 2022)).  As such, the court will not grant costs or attorney's fees to Plaintiff.  *See, e.g.*, *B.N. ex rel. Novick v. Bnei Levi, Inc.*, 2013 WL 168698 (E.D.N.Y. Jan. 15, 2013).

## CONCLUSION

Because the court finds that Defendants Gateway/Related were not fraudulently joined, Plaintiff's motion to remand is granted. The Clerk of Court is respectfully directed to remand the matter to New York State Court.

**SO ORDERED.**

Dated:    November 29, 2022
          Brooklyn, New York

                                        *Kiyo A. Matsumoto*
                                        _____
                                        **HON. KIYO A. MATSUMOTO**
                                        United States District Judge
                                        Eastern District of New York